**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:25-cv-001385 |
| SECURITY WALLS, LLC and JONATHAN SMITH, | ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Crum and Forster Specialty Insurance Company ("CFSIC"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Security Walls, LLC ("Security Walls") and Jonathan Smith, states as follows:

## NATURE OF THE ACTION

1.     In this action, CFSIC seeks a determination of its rights and obligations under an insurance policy issued to Security Walls in connection with the Underlying Action (as defined herein) filed by Defendant Jonathan Smith, which asserts certain claims against Security Walls.

2.     The Underlying Action is pending in the Circuit Court of Cook County, Illinois.

3.     Plaintiff CFSIC issued a commercial general liability policy (the "Policy" as defined herein) to Security Walls as described more fully below.

4.     Defendant Security Walls tendered the claims asserted against it in the Underlying Action to CFSIC for a defense and indemnity under the Policy.

5.      The scope of coverage available to Security Walls in connection with the claims asserted against it in the Underlying Action is governed by the terms, conditions, and exclusions of the Policy.

## JURISDICTION AND VENUE

6.      Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

7.      Plaintiff CFSIC is a corporation organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey. At all relevant times, CFSIC conducted business in the State of Illinois.

8.      Defendant Security Walls is a limited liability company organized under the laws of Tennessee with its principal place of business in Knoxville, Tennessee.

9.      Security Walls has two members, Juanita Walls and Roderick Walls, who are both residents of Knoxville, Tennessee and citizens of the State of Tennessee.

10.      Defendant Jonathan Smith is a resident of Chicago, Illinois and a citizen of the State of Illinois. Plaintiff CFSIC does not assert any claims against Defendant Smith in the Complaint and Mr. Smith has been named as a defendant in this action solely as a necessary and indispensable party.

11.      Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff CFSIC, on the one hand, and Defendants Security Walls and Mr. Smith, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying Security Walls with regard to the Underlying Action, exceeds $75,000, exclusive of interest and costs.

12.     Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Underlying Action occurred in this District.

13.     An actual justiciable controversy exists between CFSIC, on the one hand, and Security Walls and Mr. Smith, on the other hand, and by the terms provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## THE UNDERLYING ACTION

14.     On December 31, 2024, Jonathan Smith filed a proposed class action in the Circuit Court of Cook County, Illinois captioned *Jonathan Smith, on behalf of Plaintiff and a class, v. Security Walls, LLC and Steiner Security Services, Inc.*, Case No. 2024-CH-11059 (the "Underlying Action").

15.     The class action complaint in the Underlying Action (the "Complaint") seeks statutory and punitive damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") due to Security Walls' alleged violations of FCRA. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

16.     The Complaint alleges that, in June 2024, Mr. Smith applied for employment with Steiner Security Services, Inc. ("Steiner"). Ex. A, ¶ 7.

17.     The Complaint alleges Steiner offered Mr. Smith a position pending the result of a background check. Ex. A, ¶ 8.

18.     The Complaint further alleges Steiner contracted with Security Walls to conduct a background check on Mr. Smith. Ex. A, ¶ 9.

19.     The Complaint further alleges a background check is a consumer report pursuant to FCRA. Ex. A, ¶ 10.

20.     Based upon the background check provided by Security Walls to Steiner, Steiner allegedly revoked its offer of employment to Mr. Smith. Ex. A, ¶ 12.

21.     The Complaint further alleges Steiner refused to provide Mr. Smith a copy of the background check. Ex. A, ¶ 13.

22.     The Complaint alleges that the background check contained multiple entries which were older than seven years and were not convictions of crimes and, therefore, should not have appeared in the background check. Ex. A, ¶ 18.

23.     The Complaint also alleges the background check contains multiple entries of criminal conduct unrelated to Mr. Smith and that it contained information about criminal cases that have been sealed and expunged. Ex. A, ¶ 19.

24.     The Complaint further alleges that, upon receiving the background check from Security Walls, Mr. Smith reported the inaccuracies to Security Walls and that Security Walls issued a new report on June 28, 2024. Ex. A, ¶ 22-23.

25.     The Complaint alleges that second report still contained inaccurate, outdated, and sealed and expunged information. Ex. A, ¶ 25.

26.     The Complaint also alleges that Steiner presented a consent form to Mr. Smith which stated, "I release Security Walls, LLC, TransUnion, and all persons who provided information concerning me harmless from all liability or any damages resulting from the inquiry and the furnishing of said information." Ex. A, ¶ 30, (*See* Exhibit C to Ex. A).

27.     The Complaint alleges that FCRA prohibits the waiver of Mr. Smith' statutory FCRA rights. Ex. A, ¶ 33.

28. Count I of the Complaint, entitled "FCRA Claim – Class", asserts that Steiner and Security Walls violated FCRA by using the consent form. Ex. A, ¶ 39.

29. Count I seeks to certify the following class with respect to Security Walls: "(a) all individuals (b) who signed the form represented by Exhibit C (c) on or after a date 2 years prior to the filing of this action." Ex. A, ¶ 44.

30. Count I seeks statutory damages, punitive damages, and attorney's fees. Ex. A, p. 8.

31. Count II of the Complaint, entitled "FCRA Claim – Individual", is directed against Security Walls and asserts that Security Walls violated FCRA, in the following manner:

a. Mixing Plaintiff's background check report with information on one or more other persons with similar names and/or identifiers;
b. Including in Plaintiff's background check report information about criminal convictions of one or more other persons;
c. Including in Plaintiff's background check report criminal record information that had been sealed and expunged;
d. Including in Plaintiff's background check report obsolete information.

Ex. A, ¶ 52.

32. Count II seeks statutory damages, punitive damages, and attorney's fees. Ex. A, p. 9.

33. Count III of the Complaint, entitled "FCRA Claim – Individual", is directed against Security Walls and asserts that Security Walls violated FCRA when "it failed to conduct a reasonable reinvestigation following Plaintiff's dispute of the information in the report." Ex. A, ¶ 58.

34. Count III seeks statutory damages, punitive damages, and attorney's fees. Ex. A, p. 10.

35.     Count IV of the Complaint, entitled "FCRA Claim – Individual" is directed against Steiner. Ex. A, p. 10.

**THE POLICY**

36.     CFSIC issued commercial general liability policy No. GLO-100082 (the "Policy") to Security Walls for the September 30, 2023 to September 30, 2024 policy period. A true and correct copy of the Policy is attached hereto as **Exhibit B**.

37.     The Policy provides a limit of liability of $1 million per Each Occurrence; a $1 million Personal and Advertising Injury Limit; and a $1 million Professional Liability Limit. Ex. B, p. 3.

38.     The coverages for Bodily Injury and Property Damage Liability; Personal and Advertising Injury Liability; and Professional Liability are subject to a $1,000 per claim/injury deductible. Ex. B, p. 53.

39.     The Commercial General Liability Coverage Form of the Policy provides, in pertinent part, as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

* * *

   **b.**    This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory";

      **(2)**     The "bodily injury" or "property damage" occurs during the policy period; . . .

* * *

**2.**    **Exclusions**

This insurance does not apply to:

   **a.**    **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

* * *

   **q.**    **Recording And Distribution Of Material Or Information In Violation Of Law**

      "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

      **(1)**     The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

      **(2)**     The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

      **(3)**     The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA);

\* \* \*

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

    \* \* \*

2. **Exclusions**

    This insurance does not apply to:

    a. **Knowing Violation Of Rights Of Another**

        "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

        \* \* \*

    p. **Recording And Distribution Of Material Or Information In Violation of Law**

        "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

        (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

        (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

        (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the

Fair and Accurate Credit Transactions Act (FACTA);
. . .

\* \* \*

## SECTION V – DEFINITIONS

\* \* \*

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.  Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

17.  "Property Damage" means:

      **a.**      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b.**      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

Ex. B, pp. 8-9, 12-14, 20, 22.

      40.    The Policy contains a Professional Liability Coverage Endorsement which provides, in pertinent part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Description of Professional Services:**

91636 – Detective Or Investigate Agencies – Private
98751 – Security Or Patrol Agencies Including Products/Completed Operations

**SECTION I – COVERAGES, COVERAGE D PROFESSIONAL LIABILITY COVERAGE IS ADDED:**

**1.**    **Insuring Agreement**

      **a.**      We will pay those sums that the Insured becomes legally obligated to pay as damages resulting from negligent acts, errors or omissions in the practice of your business as identified in the Schedule above. We will have the right and duty to defend the Insured against any "suit" seeking those damages. We may at our discretion investigate and settle any claim or "suit" that may result.

* * *

      **b.**      This insurance applies only if:

            **(1)**      The damages are caused by negligent acts, errors or omissions in the practice of your business that take place in the "coverage territory";

Page **10** of 23

> **(2)**   The damages are caused by negligent acts, errors or omissions in the practice of your business that take place during the policy period; and
>
> \* \* \*

**2.**   **Exclusions**

> Such insurance as is provided by this Coverage Part **D** shall not apply to:
>
> \* \* \*
>
> **b.**   Any liability imposed solely by any governmental statute or regulation;
>
> \* \* \*
>
> **d.**   Damages for or arising out "bodily injury," "property damage" or "personal and advertising injury";
>
> \* \* \*

Ex. B, p. 57.

41.   The Policy contains an Exclusion – Punitive or Exemplary Damages endorsement, which provides as follows:

> This insurance does not apply to any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action; however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

Ex. B, p. 46.

42.   The Policy contains an Exclusion – Violation of Statutes or Ordinances (Limited) endorsement which provides as follows:

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to any claim or suit alleging or asserting, in whole or part, "bodily injury," "property damage," or "personal and advertising injury" arising out of any actual or alleged violation by any insured of any criminal or penal statutes or ordinances, antitrust statutes, anti-competitive statutes, unfair competition statutes, unfair business practice statutes or any regulations and rules thereunder.

However, this exclusion shall not apply to vicarious liability imposed solely upon an insured as an employer or as to any insured which is not alleged to have committed or participated in the alleged violation.

Ex. B, p. 52.

## THIS DISPUTE

43.     Defendant Security Walls has sought a defense and indemnity from CFSIC under the Policy in connection with the claims asserted against it in the Underlying Action.

44.     Plaintiff CFSIC has determined through its coverage investigation that it owes no obligation under the Policy to defend or indemnify Security Walls in connection with the claims asserted against it in the Underlying Action.

45.     Plaintiff CFSIC has advised Security Walls that it disclaims any obligation under the Policy to defend and/or indemnify it in connection with the claims asserted against it in the Underlying Action.

46.     Plaintiff CFSIC now brings this action to obtain a judicial declaration that it owes no duties under the Policy to defend or indemnify Security Walls in connection with the claims asserted against it in the Underlying Action.

**COUNT I**
**No Duty to Defend Or Indemnity under Coverage A of the Policy**

47.     CFSIC incorporates by reference herein paragraphs 1 through 46 as if the same were fully set forth at length.

48.     The insuring agreement of Coverage A – Bodily Injury and Property Damage Liability of the Policy provides, in pertinent part, "[CFSIC] will pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Ex. B, p. 8.

49.     The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Policy defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Ex. B, pp. 20, 22.

50.     The Complaint does not allege that Mr. Smith and/or the proposed class sustained "bodily injury" or incurred "property damage," as defined under the Policy, as a result of the failure by Security to comply with FCRA. Rather, the Complaint alleges that Security Walls violated the statutorily protected rights of Mr. Smith and/or the proposed class by using a consent form in violation of FCRA; by including inappropriate/inaccurate information on an initial background report in violation of FCRA; and failing to conduct a reasonable reinvestigation in violation of FCRA. Ex. A, ¶¶ 7-36.

51.     Accordingly, because the Complaint does not allege that Security Walls is liable for "bodily injury" or "property damage" as defined in the Policy, the claims asserted in the Complaint

do not fall within the scope of the insuring agreement of Coverage A of the Policy and, therefore, no coverage is afforded under Coverage A to Security Walls for the claims asserted against it in the Underlying Action.

52.     To the extent any allegations in the Complaint could be reasonably interpreted as satisfying the requirements of the insuring agreement of Coverage A, certain exclusions and endorsements contained in Coverage A of the Policy would operate to preclude coverage.

53.     Coverage A of the Policy contains an Expected Or Intended Injury Exclusion which precludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." Ex. B, 9.

54.     The Complaint generally alleges that Security Walls' willfully and or intentionally violated FCRA.

55.     Accordingly, even if the allegations of the Complaint met the requirements of Coverage A, coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by the operation of the Expected Or Intended Injury exclusion contained in Coverage A of the Policy.

56.     Coverage A of the Policy contains a Recording And Distribution of Material Or Information In Violation Of Law exclusion which precludes coverage for " [b]odily injury' or 'property damage' arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . (3) the Fair Credit Reporting Act (FCRA) . . . ." Ex. B, 12-13.

57.     The Complaint alleges that Security Walls violated the statutorily protected rights of Mr. Smith and/or the proposed class by using a consent form in violation of FCRA; by including inappropriate/inaccurate information on an initial background report in violation of FCRA; and failing to conduct a reasonable reinvestigation in violation of FCRA. Ex. A, ¶¶ 7-36.

58.     Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage A, coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by operation of the Recording and Distribution Of Material Or Information In Violation of Law exclusion contained in Coverage A of the Policy.

59.     The Policy contains an Exclusion – Punitive or Exemplary Damages endorsement which precludes coverage for "any claim for punitive or exemplary damages . . . ." Ex. B, p. 46.

60.     The Complaint seeks an award of punitive damages against Security Walls. Ex. A, p. 8-10.

61.     Accordingly, coverage for any punitive damages that may be awarded against Security Walls in the Underlying Action would be precluded by operation of the Exclusion – Punitive or Exemplary Damages endorsement contained in the Policy.

62.     The Policy contains an Exclusion - Violation of Statutes or Ordinances (Limited) endorsement which precludes coverage for "any claim or suit alleging or asserting, in whole or in part, 'bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of any actual or alleged violation by any insured of any criminal or penal statutes or ordinances, antitrust statutes, anti-competitive statutes, unfair competition statutes, unfair business practice statutes or any regulations and rules thereunder." Ex. B, p. 52.

63.     To the extent FCRA falls within the categories of statutes identified in the endorsement, coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by operation of the Exclusion – Violation of Statutes or Ordinances (Limited) endorsement contained in the Policy.

64.     The Policy Deductible Endorsement provides that a $1,000 deductible applies with respect to Coverage A on a per claim basis. Ex. B, 53.

65.     Under FCRA, an award of statutory damages is capped at $1,000 for willful violations.

66.     To the extent it is determined that the alleged violations of FCRA resulting due to Security Walls' conduct involve separate "occurrence(s)", the Policy's deductible operates to preclude any obligation under the Policy to indemnify Security Walls for any liability incurred with respect to such "occurrence(s)".

WHEREFORE, CFSIC seeks a judgment that it owes no duty under Coverage A of the Policy to defend or indemnify Security Walls in connection with the claims asserted against it in the Underlying Action.

## COUNT II
## No Duty to Defend Or Indemnity under Coverage B of the Policy

67.     CFSIC incorporates by reference herein paragraphs 1 through 46 as if the same were fully set forth at length.

68.     The insuring agreement for Coverage B – Personal and Advertising Injury Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. Ex. B, p. 13.

69.     The Policy defines "personal and advertising injury" to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . **d.** [o]ral or written publication, in any manner, of material that slanders or libels a person . . . **e.** [o]ral or written publication, in any manner, of material that violates a person's right of privacy." Ex. B, p. 22.

70.     The Complaint alleges that Security Walls violated the statutorily protected rights of Mr. Smith and/or the proposed class by using a consent form in violation of FCRA; by including

inappropriate/inaccurate information on an initial background report in violation of FCRA; and failing to conduct a reasonable reinvestigation in violation of FCRA. Ex. A, ¶¶ 7-36.

71.     However, the Complaint does not allege that Security Walls or any other party "published" the background checks prepared by Security Walls of Smith "in any manner" which violated the right of privacy of Mr. Smith and/or the proposed class.

72.     Accordingly, the claims asserted against Security Walls in the Underlying Action are not alleged to arise out of any of the enumerated offenses contained in the Policy's definition of "personal and advertising injury" and, therefore, do not fall within the scope of the Insuring Agreement of Coverage B of the Policy. Therefore, no coverage is afforded under Coverage B of the Policy for the claims asserted in the Underlying Action.

73.     Even if the allegations in the Complaint could be reasonably interpreted as satisfying the requirements of coverage under the insuring agreement of Coverage B of the Policy, certain exclusions and endorsements contained in Coverage B would operate to preclude coverage in this matter.

74.     Coverage B of the Policy contains a Knowing Violation Of Rights Of Another Exclusion which precludes coverage for "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Ex. B, p. 13.

75.     The Complaint generally alleges that Security Walls' willfully and or intentionally violated FCRA.

75.     Accordingly, even if the allegations of the Complaint met the requirements of Coverage B, coverage for the claims asserted against Security Walls in the Underlying Action

would be precluded by the operation of the Knowing Violation Of Rights Of Another exclusion contained in Coverage B of the Policy.

76.     Coverage B of the Policy contains a Recording And Distribution of Material Or Information In Violation Of Law exclusion which precludes coverage for " [p]ersonal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . (3) the Fair Credit Reporting Act (FCRA) . . . ." Ex. B, p. 14.

77.     The Complaint alleges that Security Walls violated the statutorily protected rights of Mr. Smith and/or the proposed class by using a consent form in violation of FCRA; by including inappropriate/inaccurate information on an initial background report in violation of FCRA; and failing to conduct a reasonable reinvestigation in violation of FCRA. Ex. A.

78.     Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage B, coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by operation of the Recording and Distribution Of Material Or Information In Violation of Law exclusion contained in Coverage B of the Policy. Ex. A, ¶¶ 7-36.

79.     The Policy contains an Exclusion – Punitive or Exemplary Damages endorsement which precludes coverage for "any claim for punitive or exemplary damages . . . ." Ex. B, p. 46.

80.     The Complaint seeks an award of punitive damages against Security Walls. Ex. A, p. 8-10.

81.     Accordingly, coverage for any punitive damages that may be awarded against Security Walls in the Underlying Action would be precluded by operation of the Exclusion – Punitive or Exemplary Damages endorsement contained in the Policy.

82. The Policy contains an Exclusion - Violation of Statutes or Ordinances (Limited) endorsement which precludes coverage for "any claim or suit alleging or asserting, in whole or in part, 'bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of any actual or alleged violation by any insured of any criminal or penal statutes or ordinances, antitrust statutes, anti-competitive statutes, unfair competition statutes, unfair business practice statutes or any regulations and rules thereunder." Ex. B, p. 52.

83. To the extent FCRA falls within the categories of statutes identified in the endorsement, coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by operation of the Exclusion – Violation of Statutes or Ordinances (Limited) endorsement contained in the Policy.

84. The Policy Deductible Endorsement provides that a $1,000 deductible applies with respect to Coverage B on a per injury basis. Ex. B, 53.

85. Under FCRA, an award of statutory damages is capped at $1,000 for willful violations.

86. To the extent it is determined that the alleged violations of FCRA resulting due to Security Walls' conduct involve separate "injury(ies)", the Policy's deductible operates to preclude any obligation under the Policy to indemnify Security Walls for any liability incurred with respect to such "injury(ies)".

WHEREFORE, CFSIC seeks a judgment that it owes no duty under Coverage B of the Policy to defend or indemnify Security Walls in connection with the claims asserted against it in the Underlying Action.

## COUNT III
## <u>No Duty to Defend Or Indemnity under Coverage D of the Policy</u>

87.     CFSIC incorporates by reference herein paragraphs 1 through 46 as if the same were fully set forth at length.

88.     The insuring agreement for Coverage D – Professional Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages "resulting from negligent acts, errors or omissions in the practice of your business as identified in the Schedule above." Ex. B, p. 57.

89.     The Complaint generally alleges that Security Walls' willfully and or intentionally violated FCRA.

90.     Accordingly, the claims asserted against Security Walls in the Underlying Action do not fall within the scope of the Insuring Agreement of Coverage D of the Policy and, therefore, no coverage is afforded under Coverage D of the Policy for the claims asserted in the Underlying Action.

91.     Even if the allegations in the Complaint could be reasonably interpreted as satisfying the requirements of coverage under the insuring agreement of Coverage D of the Policy, certain exclusions and endorsements contained in Coverage D would operate to preclude coverage in this matter.

92.     Coverage D of the Policy contains exclusion **b.** which precludes coverage for "[a]ny liability imposed solely by any governmental statute or regulation". Ex. B, p. 57.

93.     The Complaint alleges that Security Walls violated the statutorily protected rights of Mr. Smith and/or the proposed class by using a consent form in violation of FCRA; by including

inappropriate/inaccurate information on an initial background report in violation of FCRA; and failing to conduct a reasonable reinvestigation in violation of FCRA. Ex. A, ¶¶ 7-36.

94.     Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage D, coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by operation of exclusion **b.** contained in Coverage D of the Policy.

95.     Coverage D of the Policy contains exclusion **d.** which precludes coverage for "[d]amages for or arising out of 'bodily injury,' 'property damage' or 'personal and advertising injury'." Ex. B, p. 57.

96.     To the extent the Complaint alleges "bodily injury," "property damage" or "personal and advertising injury", coverage for the claims asserted against Security Walls in the Underlying Action would be precluded by the operation of the exclusion **d.** contained in Coverage D of the Policy.

97.     The Policy contains an Exclusion – Punitive or Exemplary Damages endorsement which precludes coverage for "any claim for punitive or exemplary damages . . . ." Ex. B, p. 46.

98.     The Complaint seeks an award of punitive damages against Security Walls. Ex. A, p. 8-10.

99.     Accordingly, coverage for any punitive damages that may be awarded against Security Walls in the Underlying Action would be precluded by operation of the Exclusion – Punitive or Exemplary Damages endorsement contained in the Policy.

100.     The Policy Deductible Endorsement provides that a $1,000 deductible applies with respect to Coverage D on a per claim basis. Ex. B, 53.

101.    Under FCRA, an award of statutory damages is capped at $1,000 for willful violations.

102.    To the extent it is determined that the alleged violations of FCRA resulting due to Security Walls' conduct involve separate "claim(s)", the Policy's deductible operates to preclude any obligation under the Policy to indemnify Security Walls for any liability incurred with respect to such "claim(s)".

WHEREFORE, CFSIC seeks a judgment that it owes no duty under Coverage D of the Policy to defend or indemnify Security Walls in connection with the claims asserted against it in the Underlying Action.

## **PRAYER FOR RELIEF**

Plaintiff, Crum & Forster Specialty Insurance Company, hereby respectfully request the entry of an order and judgment in its favor and against Security Walls, LLC and Jonathan Smith declaring as follows:

a.    This court has jurisdiction over the parties and the subject matter of this litigation;

b.    The Policy does not provide coverage to Security Walls for the claims asserted against it in the Underlying Action;

c.    Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to defend Security Walls in connection with the claims asserted against it in the Underlying Action;

d.    Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to indemnify Security Walls in connection with the claims asserted against it in the Underlying Action;

e.    Crum & Forster Specialty Insurance Company is entitled to an award of its costs; and

f.    Such other further relief as this Court deems just and appropriate.

Dated: February 10, 2025

Respectfully Submitted,

By:  */s/ James J. Hickey*
James J. Hickey, Atty. No. 6198334
Colin B. Willmott, Atty. No. 6317451
James.Hickey@kennedyslaw.com
Colin.Willmott@kennedyslaw.com
KENNEDYS CMK
30 S. Wacker Drive, Suite 3650
Chicago, IL 60606
Phone: (312) 800-5029
Fax: (312) 207-2110

*Attorneys for Crum & Forster Specialty Insurance Company*